The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good afternoon, this case number 4-24-1257, N, Ray, N, W. Before proceeding to arguments, could we have the appearances of counsel? First for appellant. Salim Mamdani for appellant. Thank you. And for the appellee. Timothy J. Londrigan with the Office of the Appellate Prosecutor's Office. Thank you. Mr. Mamdani, you may proceed with your argument. Thank you, Your Honor, and may it please the court and counsel. Obviously, there are a variety of issues that were raised in the briefs, but for the purpose of this argument, I'm going to limit myself to a discussion of a few issues that I suspect the court is interested in hearing on. Obviously, if there's other issues that the court wishes to be to important to review the factual history of this case. The respondent was transported to Blessing Hospital at 4.33 a.m. on September 3rd, at which time she was admitted to the inpatient psychiatric ward. She received treatment there until September 5th, when a petition was signed at 8 a.m. that she was subject to involuntary admission by certification. The petition recites that two certificates were attached. Those certificates were completed at 10.30 a.m. and then 11.30 a.m. on the same day. The hearing was not held then until September 16th, at which time the court found that the respondent was subject to involuntary admission, and then the respondent was discharged on September 20th. Now, the two issues that I want to address with this court are the significance of the language or the words, the petition itself, as well as the Supreme Court's decision in Juliem and how those two things interplay here. Juliem was dealing with a situation where the respondent in that case was subject to both medical and psychiatric treatment at the same time while she was admitted to a facility. At some point, she became medically cleared for discharge and psychiatric treatment continued. The court was called upon to decide when admission took place for the purposes of determining the time periods under Article 6 of the Mental Health Code, and the court there held that until a petition and a certificate are signed, no admission has taken place. Now here, this case does not present any kind of lack of clarity or dispute over when the respondent was admitted. The record is clear that the respondent was admitted at 4.33 a.m. on September 3rd, and that no petition was then filed or prepared until September 6th. Isn't there a distinction between the common sense of admission where you're taken into a hospital and the legal admission, which, as you stated, requires the petition and certificate to be presented to the director of the facility? Aren't those two different things? I think that's exactly what the court in Juliem was saying, but here the petition that was filed actually says within 12 hours of admission to the facility under this section. So, in essence, the question is whether or not that has any relevance to the determination on a legal basis whether the respondent was admitted and when that was, whether that was at 4.33 a.m. as the petitioner admits or alleges, or whether it took place at some later time. That's really kind of the question before this court in one sense, is whether or not this court will distinguish Juliem from this case based upon the fact that in Juliem and for that matter in Andrew B., which Juliem relied upon, there was some period of prior treatment, prior physical presence, prior to the alleged admission. In both of those cases, there's really no discussion of the language in the petition and whether the petition alleged a certain date or time of admission, but here that is very much at issue. The petition itself on its face says that the date and time of admission was September 3rd and, as I think we argue, that should be treated as a judicial admission, that that was the date and time of admission under the section, or at least what the hospital in the state was attempting to do, was attempting to complete an admission on certificate at that time. So, that's the one point at which I think this court could distinguish Juliem. Good afternoon. With respect to the record in terms of what happened between September 3rd and September 5th, with respect to any treatment and or examinations in a mental health sense of the respondent, what does the record reflect? The record reflects, if I recall correctly, I don't know. The initial note from Dr. Sanchez on the 3rd, I believe it describes itself as an assessment and not a treatment note. His next treatment note occurs on the 5th, but in between there, on September 4th, there is a therapist case note that notes, and I believe that's on page 22 of the impounded exhibit, that the therapist met with the respondent for an individual session. It describes a therapeutic discussion regarding what treatment she's doing, what her responses are to certain books, and frankly, I think the statute also defines treatment to include hospitalization generally. So, the fact that the records show that she was admitted as an inpatient starting on the 3rd at 4 33 a.m. reflect, at least under the statute, treatment because she was hospitalized during that time. And was she placed in a psychiatric unit on September 3rd? That's correct, Your Honor. I'm just getting to the page here, but the cover sheet of the records on page 4 of the impounded exhibits reflect, at the top, admission date 9 3 24, admission time 4 33, 0 4 3 3, type inpatient, care level psych, service behavioral med. So, I think it's very clear that there is no other record, and I want to make sure that I'm clear on this. In Julie M, the court, I believe it was in Julie M, the court dismissed the notion that the record keeping requirements of the statute present an affirmative duty to the state or to the petitioner or to the facility to maintain records that state how the treatment is, what section of the treatment is there, and therefore, the absence of any notation one way or another should be the burden of the state to carry. The court rejected that notion, and I'm not making that argument here, what I am arguing here is that when the petition says that the date and time of the admission under this section was 9 3 24 at 4 33 a.m., there is nothing in the record to contradict that. There's nothing in the record that suggests that there was any other form of detention or other form of admission, and therefore, the absence of anything to the contrary just supports the position that the admission took place on September 3rd at 4 33 a.m. What I was saying before was that the alternative to this court, if the court is not interested in or willing to distinguish the application of Julie M, Julie M sets forth within it this the framework, so to speak, for this court to analyze this case. It says that the petition and certificate are necessary components, but they're not necessarily sufficient to constitute a legal admission that the circumstances surrounding prior treatment, prior presence, et cetera, all have bearing on this court's determination of whether or not there was a valid admission under this section, and I would argue that the lack of petition, the lack of certificate within 12 hours of the admission, the lack of reading the respondent her rights and providing her with a copy of her rights and a copy of the petition within 12 hours of her all argue for, even under the court's decision in Julie M, that the admission here could be deemed to be not a valid admission, not a legal admission, and the trial court's order vacated. Now, I think the other elements of the petition that are significant, the statute requires that the petition be read to an admittee within 12 hours of admission. It's signed as if that was done, but the dates and times don't add up. The respondent was admitted on September 3rd at 4.33. Petition wasn't signed until 8 a.m. The rights weren't read until 8 a.m. The copy of the petition wasn't provided until that time. In addition, there's a question here where in Julie M, again, the court didn't really address the contents of the petition. Here we have a petition that says that it has two certificates attached. In that case, this petition was not signed because, again, by its face, it says that two certificates are attached. If that's the case, certainly the complete petition couldn't have been read to the respondent at 8 a.m. because it wasn't completed until 11.30 a.m. on the 5th. Similarly, I think the argument was made that the subsequent examination required post-admission didn't take place because the admission didn't take place until 11.30 a.m. on the 5th, and there was no other psychiatrist that examined the respondent after that. Here, there's obviously a variety of other issues with the evidence presented in the case and the sufficiency of evidence to meet the standard of a pre-hearing report or predisposition report, but I think that's laid out fairly comprehensively in the briefing. I don't know if there's anything else the court wishes to hear about either of those issues or has questions about it, but otherwise, I would think that the if there aren't any other questions, if I may reserve any remaining time for rebuttal. All right. Thank you, Mr. Mamadani. You will have time in rebuttal. Mr. Londrigan, you may proceed with your argument. Thank you, Your Honors. May it please the court and counsel, as I understand the argument of the respondent here this afternoon, it's basically a confusion over the definition of the term admission. The nurses, doctors, and medical personnel are obviously using that term in its colloquial definition, which is to allow someone into an institution or facility or whatever, some type of structure, but that's not the term as defined by the Supreme Court in Julie M. The court in Julie M. very specifically created a legal definition of the term admission, and that can only take place upon a petition and a first certificate being completed and filed with the director of the facility. And so, if I understand the argument being presented, it's that the doctors or the petition, the language in the petition itself, the medical records, the language in that, or even the testimony by one of the treating is sufficient to change that definition. And I don't believe that that's provided for by Julie M. at all. I don't think so. Excuse me. So, counsel, what is the respondent's status then in the hospital, in the psych unit between September 3rd and September 5th? Well, she's, I think, being treated for, I wouldn't say exclusively mental health, but that is one of the components that she's being treated for. She may have been treated for any type of injuries received in her attempted suicide. So, you're saying she was there voluntarily for two days? I would have been. I'm sorry. Well, I was just trying to remember. I don't remember seeing anything in the record regarding that after reading the impounded reports and the rest of it. Okay. Well, go ahead with your argument. It's puzzling. It is very puzzling. I understand the court's concern here. I mean, there's, I think Julie M. basically puts a lot of prior precedent on its head or just reverses it outright. It raises a lot of questions, quite frankly, not just the one raised by the court in this particular instance. I don't know how to answer the court's question more clearly. There isn't anything in the record that I could detect that would suggest what her status was. I don't, you know, the only defense that the state, the hospital would have to that would be to argue that she's not admitted at that time and therefore they're not required to keep records on her status. So, if she's not admitted under the definition of the mental health code, what is her status? She could walk out at any time then? Between the 3rd and the 5th? I would think she could. You know, I would think she could walk out and if the hospital tried to her, she would have the right then to sue the hospital for whatever, you know, civil cause of action she may have. And I think that the court in Julie M made that pretty clear. I mean, the dissent by Justice, I don't know, try to find it, but Justice Burke, I mean, anticipated this very scenario. And the court was very clear in paragraphs 44 through 54 discussing what the rights were of a beneficiary of or recipient of care who was not admitted involuntarily pursuant to the act. And the court was very clear in saying that it thought Chapter 2 gave specific rights to the recipient and the recipient enjoyed other rights by the Constitution and other civil rights of action against the hospital. And I recall that the defendant, I'm sorry, the respondent in their response brief made a that stands out in my recollection that the hospital, if they had a, not a bonafide, but a good faith belief that the defendant was being involuntarily committed that they were therefore open to the benefits of the mental health code, which is not correct in my interpretation of Julie M. I don't think the court could be more specific in stating that if the facility or that the mental health code protects the facility by outlining the precise steps it must take to avail itself of the legal protections afforded by a properly executed admission under the mental health code. If the facility fails to follow the admission procedures, thereby depriving the recipient of the admission specific protections, then it too is bereft of any legal protections for its detention and or treatment of the recipient. So it looks as though the hospital has to adhere strictly to the code if it's going to be protected by the code or under the code. And the same is for the recipient. The recipient enjoys rights of civil action against the hospital if they do not. So if the recipient attempts to leave the hospital between September 3rd and September 5th and the hospital tries to stop them, you know, I guess that does open up a potential cause of action against the hospital to justify its conduct. I don't know how we get around that and still follow Julianne. And so I think all of the defendants' arguments basically or respondents' arguments are based on the fact that they're saying the word admission was used in this colloquial sense. And she was admitted into the hospital as that term is ordinarily defined. But she was not admitted as it's defined by the mental health code and found under Julianne. So she's not admitted until the first certificate is completed at 10 30 on the 5th. It causes the state a lot of questions too. And, you know, I've gone over a lot of precedent trying to put this together and it causes more confusion than clarity. On another topic, how did the state comply with the requirement of a dispositional report here? Was there one filed? Section 810? Yes, 810. No, I don't believe there was one and was there anything in the record that would indicate there was any other type of compliance with the requirements of 810? Yes, there was the testimony of the treating physician. It wasn't the absence of the 810 certificate or 810 compliance was not made at the time of the hearing. And in the absence of objecting to that, there's case law suggesting and I cited it in my brief. I think this court actually addressed that in Ray Bonney M. And what is the requirement of that compliance? Is it testimony that would substitute for that? And what was the gist of the testimony here, counsel? Was there any detail whatsoever in that testimony of the doctor? Detail as to the length of the type of treatment, the length of treatment, any of those requirements? There wasn't, was there? Well, I think the doctor indicated that he thought 90 days would be a sufficient term. The doctor testified that he thought that it was the least restrictive alternative available to properly treat her, that she required immediate treatment, that she was a danger to herself. Those were conclusions that the doctor testified to. There was absolutely no testimony whatsoever with regard to the reasons for that, was there? Unless I missed it when I read the report of proceedings that are in this record, but there was nothing, was there? Well, it depends on, I guess, how you want to define conclusions or supporting facts. How about a basis, a basis, a reason for that? He did not explain what he specifically did during his examination of the recipient or the respondent, but he did indicate that he saw her daily throughout this time, from September 3 through September 16th, and that from his observations of her, he believed that she needed continued treatment. And you believe, counsel, that that, your argument is that complies with Bonnie M? Yes, I do. If you read Bonnie M, I think it was substantially similar. Thank you. There are no other further questions from the court. I don't see any other questions. Thank you. All right. Thank you, Mr. Londrigan. Mr. Mamdani, a rebuttal argument. Your Honor, just very briefly to address the question as to the respondent's status between the 3rd and the 5th, I'd point to pages 8 through 9 of the impounded record, which is Dr. Sanchez's assessment and, well, let's see, it's behavioral medicine history and physical. It's the, I'm scrolling back to the top here. We've got a history of the presenting illness that details the prior medical treatment and stabilization at Culbertson prior to transport to Blessing. Then further down, like I said, page 8 through 9, in the assessment and decision making, it is documented, patient presents with depression associated with active suicidal ideation, thereby presenting an imminent risk to herself requiring inpatient treatment for safety and stabilization. Record then continues. Plan. Number one, patient admitted to the inpatient psychiatric unit for safety and stabilization. Laboratory investigation rating scale should be reviewed and additional evaluation consultation ordered as clinically indicated. Review current psychotropic medications. Make adjustments as clinically indicated. Patients shall participate in unit milieu provided with psychoeducation appropriate psychotherapy. Treatment team shall review dynamic and static risk factors regarding patient's threat to themselves and others. I mean, this is all describing inpatient treatment and whether or not the decision in Julie M applies here where there really isn't any material dispute that the respondent was admitted and then attempted admission pursuant to this section on September 3rd. Certainly, she was treated during that time and there's no evidence of any other type of admission here. And notwithstanding that, if the court is persuaded that Bonnie M can't be distinguished or that Bonnie M must be followed as to the description of when an admission takes place, I would point the court to, I think it's paragraph 45 in Bonnie M, I beg your pardon. I think I just said Bonnie M a couple of times. Julie M, thank you. I think it's actually, now that I look down at my notes, I think it's Bonnie S, but I may have my notes wrong. But Julie M says at paragraph 45 that these are necessary but not sufficient to conclude that an admission was legally completed under Article VI. So, if you look at it as a basis to distinguish Julie M that this was attempted and the record showed that it was an attempted admission on September 3rd, or if you look at it as this is the evidence that Julie M was telling courts to look at when evaluating whether an admission was completed appropriately, in either event, the conclusion is the same. This was not an appropriate admission. This was not a statutorily compliant admission and the trial court's order should be vacated. I don't have anything else, if there's nothing else, I thank you for your time. All right. I don't see any questions. Thank you, counsel. Thank you both. The court will take the case under advisement and will issue a written decision. Court stands in recess.